1

2

3

4

5
                    IN THE UNITED STATES DISTRICT COURT
6
              FOR THE WESTERN DISTRICT OF WASHINGTON AT TACOMA

7

8  JUDSON GRAY as Personal Representative of        NO.
   the Estate of KIMBERLY BENDER, deceased;
9  DAWN REID; M.S., by and through *guardian*       COMPLAINT
   *ad litem* Michael B. Smith,
10                                                   JURY DEMANDED
   Plaintiffs,
11
   v.
12
   CITY OF FORKS, a political subdivision of the
13 State of Washington; MIKE ROWLEY, in his
   personal capacity; ED KLAHN, in his personal
14 capacity; BRANDON LEASK, in his personal
   capacity; KELSEY PEARSON, in her personal
15 capacity; LEX PROSE, in his personal capacity;
   JOHN GRAY, in his personal capacity; JOHN
16 and JANE DOES 1-10, in their personal
   capacities,
17
   Defendants.
18

19        COME NOW the above-named Plaintiffs, by and through attorneys Gabriel S. Galanda,

20 Ryan D. Dreveskracht and Matthew J. Slovin of Galanda Broadman, PLLC, and, by way of claim,

21 allege upon personal knowledge as to themselves and their own actions and upon information and

22 belief upon all other matters, as follows:

23

24

25

COMPLAINT - 1

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

## I.      INTRODUCTION

1.      Kimberly Bender, a 23-year-old Quileute tribal member, was detained in the Forks City Jail ("Jail") from at least July 15 through 24, September 25 through October 10, and November 5 through December 7, 2019.

2.      While in custody at the Jail from July 15 through 24, September 25 through October 10, and November 5 through December 7, 2019, Kimberly was sexually harassed and tormented by City of Forks corrections officer John Gray.

3.      Kimberly reported Gray to the Jail on November 16, 2019, but the Jail determined that her "allegations of misconduct" against him were "**unsubstantiated**" on November 19, 2019.

4.      As it turns out, Gray sexually assaulted or tormented five women in the Jail from July 2019 through November 2019.

5.      On December 7, 2019, while still in custody, Kimberly committed suicide.

6.      This is an action arising from Kimberly's wrongful and unnecessary death and the Defendants' negligence, gross negligence, and wanton and deliberate indifference to Kimberly's wellbeing, medical condition, and conditions of confinement.

7.      The claims herein include all claims for damages available under Washington and federal law to Kimberly, her Estate, and all statutory and actual beneficiaries, including her young son.

## II.      PARTIES

8.      JUDSON GRAY is the Personal Representative for the Estate of KIMBERLY BENDER, a Quileute tribal member.

9.      DAWN REID is Kimberly's biological mother.  She brings suit in her Personal Capacity and is entitled to damages for the loss of her daughter.

COMPLAINT - 2

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

10.    M.S., by and through *guardian ad litem* Michael B. Smith, is Kimberly's biological son and minor child.  He brings suit in his Personal Capacity and is entitled to damages for the loss of his mother.

11.    Defendant CITY OF FORKS ("Forks" or "the City") is a political subdivision of the State of Washington that is responsible for administering the Jail, which is located within the City of Forks Police Station in downtown Forks.  The Jail is an adult corrections facility responsible for providing proper custody, control, and supervision for inmates.   The City of Forks is also responsible for providing a safe and healthy environment at the Jail for detainees and inmates within the City's custody, including appropriate and necessary protection measures and medical and mental health care.

12.    Defendant MIKE ROWLEY is the City of Forks Police Chief and head of the Forks Police Department.  He supervised, administrated, and managed the Jail at the time of Kimberly's injuries and death, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.   Defendant Rowley was also responsible for the training, supervision, and discipline of City employees and/or agents, including the below individually named Defendants and Does 1 through 10.  He is sued in his personal capacity only.

13.    Defendant ED KLAHN is a Sergeant with the City of Forks Police Department.  He supervised, administrated, and managed the Jail at the time of Kimberly's injuries and death, and was responsible for ensuring the presence and implementation of proper policies, procedures, and training.  Defendant Rowley was also responsible for the training, supervision, and discipline of City employees and/or agents, including the below individually named Defendants and Does 1 through 10.  He is sued in his personal capacity only.

14.    Defendants ROWLEY and KLAHN shall hereinafter be referred to collectively as "Supervisory and Policymaking Defendants."  They were at all times state actors.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

15.     Individually named Defendants BRANDON LEASK, KELSEY PEARSON, LEX PROSE, and JOHN GRAY are employees of the City of Forks and corrections officers at the Jail. They were at all times state actors.  These Defendants knew that Kimberly was (1) in the need of medical care; (2) suicidal; (3) in the midst of a mental health crisis; and/or (4) sexually harassed and tormented.  In spite of this knowledge, these Defendants took no steps to prevent serious injury and death to Kimberly.  These Defendants were negligent; wantonly or deliberately indifferent; or acted in furtherance of an official and/or *de facto* policy or procedure that caused Kimberly's injuries.  These Defendants are sued in their personal capacities only.

16.     Defendants JOHN DOES 1 - 10 ("Defendants Doe") are subcontractors, employees, and/or agents of Defendant City of Forks.  These Defendants are persons who knew that Kimberly was (1) in the need of medical care; (2) suicidal; (3) in the midst of a mental health crisis; and/or (4) sexually harassed and tormented.  In spite of this knowledge, these Defendants took no steps to prevent serious injury and death to Kimberly.  Each Defendant Doe was negligent; wantonly or deliberately indifferent; acted in furtherance of an official or *de facto* policy or procedure of deliberate indifference; or were responsible for the promulgation of the policies and procedures and permitted the customs/practices pursuant to which the acts alleged herein were committed.  The identities of Defendants Doe unknown at this time and will be named as discovery progresses. Defendants Doe are sued in their personal capacities only.

### III.     JURISDICTION AND VENUE

17.     This action arises under Washington State's wrongful death law and the Constitution and laws of the United States, including 42 U.S.C. § 1983.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

COMPLAINT - 4

18.     Venue is proper in the Western District of Washington pursuant to 28 U.S.C.§ 1391(b)(1) and (b)(2).  The City of Forks is located in this District, and the events and omissions giving rise to the claims in this action occurred in this District.

19.     An RCW 4.92.100 Tort Claim was properly and timely filed with the City of Forks on June 23, 2020.  Over sixty calendar days have elapsed since the claim was presented to the City. All substantive and procedural requirements of RCW 4.92.100 have been met.

## IV.    FACTS

**A.    KIMBERLY'S INCARCERATIONS**

20.     Kimberly was incarcerated in the Jail from July 15 through 24, September 25 through October 10, and November 5 through December 7, 2019.

21.     Kimberly had been previously incarcerated in the Jail, where, in 2014, she was placed "on suicide watch" by Defendant Klahn, with instructions to Defendants Leask and Prose to "check her every 15 mins."

22.     In a "fit for jail" medical determination made by the Forks Hospital in 2016, the hospital reported to the Jail Kimberly's history of "long standing depression and self-cutting."

23.     In July 2019, the Jail arranged for a medical transport of Kimberly to the Forks Hospital. Quileute Tribal Police Officer Mike Palmer conducted the medical transport.   In a "fit for jail" medical determination, which was issued to Officer Palmer and in turn to the Jail, Kimberly's history of "long standing history of self-cutting" was further reported to the Jail.

24.     By November 2019, it was well known by each and every Defendant that Kimberly exhibited a number of suicide risk factors which, if not immediately attended to by a skilled healthcare provider, put her at a substantial risk of serious and immediate harm.

25.     By November 2019, it was also well known by each and every Defendant that Kimberly was at risk for opioid withdrawal syndrome.  Despite knowing that Kimberly was a daily

COMPLAINT - 5

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

heroin user, the Jail did not implement any kind of detox protocol for Kimberly.  In fact, at the time, it was the Jail's policy and practice to deny medically appropriate treatment to opioid users.

**B.**     **DEFENDANT GRAY'S KNOWN PATTERN OF SEXUALLY ASSAULTING FEMALE INMATES**

26.     For over twenty years and until fall 2018, Defendant Gray worked as a corrections officer at the Washington State Department of Corrections ("DOC") Clallam Bay Corrections Center ("CBCC").

27.     On October 17, 2018, an investigation of Defendant Gray culminated in the CBCC Superintendent finding that Gray disrespected and sexually harassed his fellow corrections officers.

28.     Defendant Klahn hired Defendant Gray to serve as a corrections officer at the Jail by April 12, 2019.

29.     Defendant Gray was an "emergency hire" because the Jail was "down two positions," according to Defendant Rawley.  Defendant Klahn admits he hired Defendant Gray "fresh out of Clallam Bay, so [they] figured he had the tools."

30.     By June 2019, Defendant Gray failed a firearms qualification training that Defendant Klahn attended.  According to the firearms trainer: "Mr. Gray failed the training over the course of three hours.  He could not hit a target.  He was hyper nervous.  We ran out of ammunition for him to train with and adjourned the training without him being qualified to wield a gun while on the job with Forks.  He was embarrassed and apologetic."

31.     Defendant Gray was unfit for the job and Defendant Klahn knew it.

32.     Defendants Rawley and Klahn then left him untrained and unsupervised, including during his typical graveyard shift as the lone corrections officer at the Jail.  The City had an established practice of placing only one officer on duty to monitor the entire Jail—both males and females—with the exception of shift changes.

33.     By July 2019, Sergeant Don Ponton frequently observed Gray in the hall with female

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

inmates in the middle of the night, when and where he should not have been.  According to Sgt. Ponton:

> **Quite often, John was out in the hallways with the female trustees at night, one o'clock, two o'clock in the morning**. . . One particular night I went in there, Wendy [Ayala] was back in the changing room. . . . [S]he and the Konopaski girl were the trustees and I'd see them out there quite often. And I assumed Wendy was back in the changing room and the Konopaski girl was standing with her back toward the control room. . . . John was standing there with his hand against, standing outside of the changing room, kind of leaning up against the door jamb with his hand there, and he was talking to Wendy . . . [T]he Konopaski girl was standing there. The way she was standing, it felt like, it kind of looked like she was very uncomfortable. She looked very uncomfortable. And then John walks away, or comes back around. The Konopaski girl sees me standing in the control room and she has... The only way I can explain it is like a deer in headlights look, like, "What is going on?" kind of look. And she turns back and looks back down toward the changing room. And John comes into the control room and his demeanor was. **He was surprised that I was standing in there. . . . I was shocked. But I'd been seeing him out there with Wendy and the Konopaski girl on a regular basis. It was shocking to me. . . . I've been here for like eight years and I've never seen anything like that. . . .** I've never seen that so I didn't feel like that was right and I did address it with Ed, Sergeant Klahn, and with, I think, Brandon [Leask].

34.     After Sgt. Ponton's report, Defendant Klahn "counseled" Defendant Gray, but admits: "I kind of brushed it off the side because he was such a go-getter. . . I did just kind of swept it under the carpet because I thought he was such a hard worker."

35.     Defendant Gray first sexually first assaulted Nancy Ayala, a heroin addict who was in the Jail's custody from June 13, 2019 through July 29, 2019.  According to a Jefferson County's Sherriff's report, another female inmate, Catherine Ward-Black observed Gray "bending over" Ayala while "having sex with Gray" in the clothing storage room.  Defendant Gray punished Ward-Black by "not letting Black out of her cell [or] giv[ing] her meals or medication."

36.     Defendant Gray next sexually assaulted Jennifer Holes, another heroin addict who was in custody from September 5, 2019 to 25, 2019.  Holmes says:

> [H]e came into the room, which is a very small room. And his exact words were, "Jennifer, I want you to grab my dick." That's what he said. And I said, "No." And then he said it again. . . . I thought he was joking. I don't know. And then when he came at me some more, cornered me into the room next to the bookshelf and told

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

me again, and I did [touched his erect penis]. And then he said, "It's a Class B felony if you get caught doing this.". . . And then he wanted me to take off my shirt and I said, "No." And I wanted to go back to my room. I got my books. And he let me go back to my room. . . . And then when he popped my door again and he kept telling me to take off my bra and come out in a white shirt. And then he wanted to take a shower with me. **And this went on every day he was on shift**, he would say something.

37.     Defendant Gray next sexually assaulted Jennifer Morales, who is also a heroin addict, while she was in custody from September 25, 2019 through October 4, 2019.  According to a Jefferson County's Sherriff's report, Defendant Gray forced Morales to perform oral sex on him; "Gray paid her bail the next night . . . She thinks he paid her bail to pay her off so she wouldn't say anything."

38.     Defendant Gray next sexually assaulted Morgan Lee, who was in custody from September 26, 2019 through October 6, 2019.   While Defendant Gray was transporting Lee from Mason County to the Jail, a Jefferson County's Sherriff's report indicates: "He slipped his hand under her skirt and penetrated her with his finger through her underwear."  During the drive, Lee says: "He was just telling me about him being a prison guard, and about the laws, the sexual assault laws there are or whatever in the jail, and he's been accused of being too forward or something with females, and stuff like that. And I was like, 'Okay.' And then he was asking me to touch his junk. And I'm just like, 'What? Are you joking me?'"

39.     Kimberly would be Defendant Gray's fifth known victim.  Between July 2019 and November 2019, Defendant Gray sexually harassed and tormented her.  Defendant Gray suggested in reference to Kimberly to swallowing her medication that she could also swallow semen.  As Kimberly told the Jail: "he's made comments as to when I'm taking my meds 'Oh if you can swallow that I wonder what else you can swallow.'"  When she was asked to clarify: "I think he means something serious, and swallowing some cum or something is what I kinda picked up because of the laugh and the wink after he says it." On another occasion, Gray referred to

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

Kimberly's inhaler as a sexual toy.

40.     Defendant Gray woke the women up and caused them to get out of bed throughout the night in order to leer at them in their nighttime sleepwear.  He drew the women's gaze to his unexposed erection—he became aroused while "talking dirty" to the women without invitation or provocation.

41.     Defendant Gray specifically stalked Kimberly in her cell and made sexual comments several times per night.  When Kimberly was asleep, Defendant Gray woke her up with vile remarks.

42.     Kimberly, struggling with heroin withdrawal, was unable to sleep, rest, or relax because of Defendant Gray. In the middle of the night, when Kimberly tried to sleep, Defendant Gray perched himself in the doorway of her jail cell, preying over her and sexually tormenting her. Kimberly felt terrified for her safety at all times and, eventually, of no worth.

C.     **KIMBERLY COMPLAINS OF DEFENDANT GRAY'S SEXUAL MISCONDUCT**

43.     Kimberly was taken into custody on November 5, 2019, for a probation violation that involved possession of marijuana-related paraphernalia.  Defendant Gray immediately resumed sexually accosting her.

44.     Eleven days later, on November 16, 2019, Kimberly attempted suicide by cutting herself "numerous times diagonally across" her left forearm while in custody, according to a Jail Incident Report prepared by Defendant Leask.  It was three days prior when Defendant Gray suggested in reference to Kimberly to swallowing her medication that she could also swallow semen.

45.     That morning, the Jail again arranged for a medical transport of Kimberly between the Jail and the Forks Hospital.  Officer Palmer again conducted the medical transport.  Kimberly was admitted to the Forks Hospital Emergency Room and received medical care.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

46.     According to a Forks Hospital Nursing Assessment report:

HORIZONTAL , SELFINFLICTED CUTS ON HER FOREARM FROM RAZOR BLADE. MOST ARE SUPERFICIAL, 2 NEED REPAIRED.   SHE IS SAD BECAUSE OF LOSING HER GRANDFATHER AND NOT BEING TO GO TO HIS FUNERAL TODAY BECAUSE SHE IS IN JAIL. . . .

**Associated Symptoms** depression and suicidal ideation and self harm present and past . . .

**MD Assessment**
. . . She had a razor for a few days she says and this morning she used it to cut her left forearm many times and was brought for laceration care. She says she is sad and mad at herself for her decisions. . . . She was cleared for jail on 11/5 here in ED and has been in jail since. *She is in the area of the jail with a constant camera and watched. They can search her room and make sure no weapons still in her access and they say they have the razor she used already. She has a hx of self harm and cutting* . . . (italics added).

47.     While in the Forks Hospital that day, Kimberly complained of Defendant Gray to Officer Palmer and Quileute Tribal Natural Resources Officer Rick Andersen.

48.     In an interview recorded by Officer Palmer on his bodycam, that occurred by 11:00 a.m., Kimberly told him that Defendant Gray was "making inappropriate comments for several months," dating back to July 2019.

49.     Kimberly said: "He's starting to really make me feel uncomfortable.   She told Officer Palmer: "Last week I was still detoxing and he was coming to my door" and sexually harassing her.   She explained "I won't go to the bathroom when he's on. It's just fucking uncomfortable."

50.     Kimberly is depicted here in tears as she disclosed Defendant Gray's mistreatment of her to Officer Palmer:

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

51. That same day, Kimberly was again deemed "fit for jail" by the Forks Hospital subject to specific medical instructions, including: "Safety in jail, needs all weapons removed from her access and needs [sic] watched for suicidal gestures and attempts."

52. The Forks Hospital Emergency Room doctor also instructed that Kimberly be "monitored," as she was obviously a suicide risk.   The Forks Hospital mistakenly thought she would be "safe" in the Jail.

53. The Forks Hospital discharged Kimberly back to the Jail.   Officer Palmer transported her back to the Jail and provided Defendant Leask Kimberly's "fit for jail" medical determination and related instructions from the Hospital for her medical care.

54. Over the 11:00 a.m. hour that day, Officers Palmer and Andersen met with Defendants Klahn and Leask at the Jail and advised them of Kimberly's complaint that Defendant Gray had sexually tormented her.

55. Later that day, City of Forks Officer Jackson Folkner and Defendant Leask interviewed Kimberly, ostensibly pursuant to the Prison Rape Elimination Act of 2003, 42 U.S.C. §§ 15601–15609 ("PREA").

COMPLAINT - 11

1    56.    Kimberly advised them that Defendant Gray had sexually tormented her throughout

2   her confinement in July 2019 and November 2019, including when dispensing her medication,

3   needing feminine hygiene products, or requesting hydration.

4    57.    She told them Defendant Gray referred to her inhaler as a sexual toy.  She told them

5   Defendant Gray disturbed her while sleeping while making vile remarks.

6    58.    She told them she was afraid to be alone with Defendant Gray and that she felt he

7   intended to harm her.  She told them about two of the women who she knew that Defendant Gray

8   sexually assaulted.

9    59.    She explained her overall feeling about Defendant Gray's intentions towards her

10  since July 2019: "Pretty much sexual fucking activity in some way somehow, he's always trying to

11  get around the cameras."

12    60.    At 4:00 p.m., Defendant Leask reported to West End Outreach Services ("WEOS")

13  that Kimberly "had self-harmed" and requested crisis counseling.  Kimberly reported Defendant

14  Gray to WEOS, which reported: "scheduled jail officer for the night triggers PTSD reactivity . . .

15  Client is nervous about next guard [Defendant Gray] coming on duty." WEOS assessed her as a

16  "moderate risk for self-harm," despite Kimberly reporting she "will not self-harm again."

17    61.    By 10:00 p.m. that night, Defendant Leask logged "Bender, K cut self medical

18  emergency happening."

19    62.    On November 18, 2019, Officer Folkner issued a report to Defendant Rowley in

20  which he summarized the results of his investigation:

21      From my training and experience I believe that Bender is telling the truth for
        multiple reasons.

22              Her statement is consistent with the one given to Officer Palmer.
                Some of the phrasing that she mentions I have personally heard Officer

23      Gray say in different context.
                She gave a free-flowing and unprompted narrative of her experience

24      without leading or coaching.
                Bender exhibited embarrassment over certain details; which is common in

25

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

this genre of conduct, in manor [sic] consistent with a truthful statement.

63.     On November 19, 2019, Defendant Rowley issued an Internal Investigation Report, concluding he and Officer Folkner were "unable to find substantial evidence that Officer Gray" violated any Jail policy.

64.     Defendant Rowley characterized Defendant Gray's activities as "verbal unprofessionalism."

65.     Defendant Rowley found there was "no evidence to prove allegations of misconduct" by Kimberly against Defendant Gray and that her complaint about him was "**unsubstantiated**" (emphasis in original).

66.     Defendant Rowley concluded the internal investigation, without ever notifying Kimberly that anybody believed her. The Forks Mayor quietly terminated Defendant Gray's probationary employment at the Jail without cause, and he returned to work at CBCC.

67.     Nobody with the City of Forks told Kimberly that they believed her complaint against Defendant Gray. That is because the City of Forks and its Supervisory and Policymaking Defendants adopted and implemented an established practice of ignoring complaints of sexual harassment or abuse, which affirmatively placed Kimberly and all female inmates in danger.

68.     In the alternative, the City of Forks and its Supervisory and Policymaking Defendants took some unknown steps to prevent Defendant Gray and others from sexually harassing or abusing inmates, but they "failed to take further reasonable action in light of the circumstances to avoid new liability." *Vance v. Spencer Cty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000).

**D.     KIMBERLY IS ALLOWED TO COMMIT SUICIDE WHILE IN CUSTODY**

69.     On November 22, 2019, three days after unsuccessfully reporting Defendant Gray to the City, Defendant Klahn was notified by a social worker that Kimberly was in need of

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1    psychiatric attention.

2        70.    On December 4, 2019, Kimberly was readmitted by the Forks Hospital for cardiac

3    monitoring; she was described as "a tremulous tearful flushed younger adult Native American

4    female."

5        71.    Between 6:50 and 6:54 p.m. on December 7, 2019, Defendant Leask arrived to the

6    Jail for his shift and conferred with Defendant Pearson, "getting passdown" or shift change

7    instructions from her.

8        72.    Defendant Leask and Defendant Pearson spoke of Kimberly.  According to an

9    Incident Report prepared by Defendant Leask:

10       Pearson stated that [Kimberly] didn't come out at [6:00 p.m.] to get her mail.  Due
         to policy changes after a staff assault there staff need another person in the jail when
11       opening cell blocks so she couldn't go in and check on her.  PEARSON told me she
         called for her over the speaker I said it's ok she's probably just sleeping as she started
12       working nighttime trustee last night.

13       73.    Defendant Pearson reportedly "buzzed [Kimberly] a few more times but she still did

14   not answer . . . so she assumed she was taking a shower."

15       74.    Defendant Pearson last saw Kimberly at 3:57 p.m.—*hours* before her suicide.

16       75.    It was at 3:57 p.m. when Kimberly finished a twenty-minute call with her mother

17   Dawn Reid.  Kimberly told her mother she was lonely as the only female inmate in the Jail. They

18   ended the call by each telling each other, "I love you."

19       76.    At 6:55 p.m., Defendant Leask walked into Kimberly's cell and "found that she had

20   hung herself."

21       77.    According to Defendant Leask, Kimberly "was hanging with one end of a bed sheet

22   wrapped around her neck and the other attached to a door handle. She was leaning forward in a

23   kneeling position with her knees suspended a few inches off the ground."

24       78.    At 6:59 p.m., medics attempted to resuscitate Kimberly "but rigor mortis had already

25

COMPLAINT - 14

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

set in."

79.    At 7:08 p.m. medics declared Kimberly dead.

80.    Later that night, Defendant Rowley met with Ms. Reid and Kimberly's other family members at the Assembly of God church in Forks.  Defendant Rowley admitted that Kimberly had hung from the door with the sheet wrapped around her neck for at least thirty minutes.  When asked about Kimberly's sexual allegations against Defendant Gray, Defendant Rowley said only that he no longer works at the Jail, and refused to offer any further explanation.

81.    According to a Clallam County Sherriff's Office report about Defendant Gray's repeated sexual misconduct at the Jail, a witness indicated that "one of the women in there committed suicide because he raped her."  That woman was Kimberly.

**E.    CITY OF FORKS CONCEALS KIMBERLY'S COMPLAINT ABOUT GRAY FROM STATE INVESTIGATORS AND MEDICAL EXAMINERS.**

82.    On December 7, 2019, 7:13 p.m., the Jefferson County Sheriff's Office commenced to investigate the circumstances surrounding Kimberly's death.

83.    In the course of Jefferson County's homicide investigation, Jefferson County interviewed Defendants Rowley, Klahn, Leask, Pearson, and Prose, among others at the Jail.

84.    At no time during the homicide investigation did Defendant Rowley disclose to Jefferson County investigators that 18 days prior to Kimberly's suicide, he learned of Kimberly's complaint that Defendant Gray sexually tormented her while in the City's custody.

85.    Nor did Defendant Rowley disclose to Jefferson County homicide investigators that he ostensibly investigated Kimberly's complaint.  Per the established practice at the Jail, Defendant Rowley covered up those material facts and in turn failed to ensure that serious risk to Kimberly and other detainees was addressed in a reasonable timeframe.  *Cf. Thomas v. Sheahan*, 499 F. Supp. 2d 1062, 1098 (N.D. Ill. 2007).

COMPLAINT - 15

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

86.   On December 10, 2019, Jefferson County Sheriff Joe Noel publicly reported that Kimberly "did not give any indication that she was suicidal and she was not on suicide watch. Inmates are checked on once every two hours."  Defendant Rowley publicly stated he "had no reason to believe policy wasn't followed"—another cover up of material facts.

87.   By December 11, 2019, neither Defendant Rowley nor any other City of Forks official had disclosed Kimberly's complaint against Defendant Gray, or Defendant Rowley's purported internal investigation onto that matter, to Jefferson County criminal investigators.

88.   On December 12, 2019, the Clallam County Coroner, by and through Stanley D. Adams, M.D., issued an initial case report, concluding that the manner of death was "Suicide" and the cause of death was "Asphyxia due to hanging."

89.   Also on December 12, 2019, Dr. Adams requested an autopsy from the Washington State Patrol.  Dr. Adams handwrote several notes on the "Death Investigation—Request for Analysis" form that he submitted to the Washington State Patrol, including: "prior suicide attempt (11/16/19)" and "subsequent information indicates possible sexual assault while incarcerated."

90.   On January 6, 2020, Washington Forensic Services, PLLC, completed an autopsy report regarding Kimberly's death on behalf of WSP, which, like Dr. Adams, concluded that the cause of death was "asphyxia due to hanging" and the manner of death was "suicide."

91.   Through its acts and omissions, described above and in other respects as well, the Defendants repeatedly and habitually violated PREA and its regulations, 28 C.F.R. § 115, which reflect the known and accepted minimum standards of care for corrections facilities in the United States, yet were ignored by the Jail and its Supervisory and Policymaking Defendants.

92.   In May 2010, the Clallam County Sheriff's Office arrested Defendant Gray at CBCC the end of his shift.

COMPLAINT - 16

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

93.     Beginning on June 29, 2020, the Clallam County Sheriff's Office charged Defendant Gray with felonies for sexually assaulting Holmes, Morales, Ayala, and Lee while employed at the Jail during the summer and fall of 2019.

94.     Defendant Gray's labor union afforded him a defense lawyer.

95.     On February 2, 2021, Defendant Gray pleaded guilty to crimes associated with his sexually assault of Holmes, Morales, Ayala, and Lee.

96.     An additional crime was not charged because Kimberly is dead.

**F.     KIMBERLY'S DEATH WAS PREVENTABLE.**

97.     Kimberly's death by suicide was tragic and could have been prevented by standard approaches to jail management regarding sexual harassment and suicide prevention.

98.     The policies, established procedures, and protocols in place at the Jail—maintained *vis-à-vis* its Supervisory and Policymaking Defendants—put Kimberly and all other similarly situated inmates at an increased risk of serious and imminent harm and death.

99.     That these policies, established procedures, and protocols would put similarly situated patients at an increased risk of serious and imminent harm or death would be obvious to any jailer exercising his or her professional judgment.

100.    The City of Forks—*vis-à-vis* its Supervisory and Policymaking Defendants—also failed to adequately train its employees, resulting in a condition that put Kimberly and all other similarly situated inmates at an increased risk of serious harm and death.

101.    That this failure to train would put similarly-situated inmates at an increased risk of serious harm and death would be obvious to any jailer exercising his or her professional judgment.

102.    The City of Forks—*vis-à-vis* its Supervisory and Policymaking Defendants—also failed to properly hire and supervise its employees, resulting in a condition that put Kimberly and

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1  all other similarly situated inmates at an increased risk of sexual harassment or serious harm and

2  death.

3       103.    That this failure to properly hire and supervise would put similarly-situated inmates

4  at an increased risk of serious harm and death would be obvious to any jailer exercising his or her

5  professional judgment.

6       104.    The scope of a jailer's duty to a patient is determined by the standard of care.  Here,

7  Defendants were indifferent to Kimberly's safety, medical, and mental health needs, and that

8  indifference was indicative of a pattern of following below the standard of care in dealing with the

9  needs of inmates.

10       105.    Kimberly would have not died at the time and in the manner that she did had

11  Defendants not been indifferent to her safety, medical, and mental health needs.

12       106.    Defendants' indifference to Kimberly's safety, medical, and mental health needs

13  was ratified by Supervisory and Policymaking Defendants.

14       107.    Despite knowledge of Kimberly's safety, medical, and mental health needs,

15  Defendants failed to administer and attend to her on December 7, 2019.  As a result, Kimberly was

16  allowed to successfully take her own life.

17       108.    Hanging is the most common form of successful suicide in jails.  This is well known

18  and was in fact known by the City of Forks and its Policymaking and Supervising Defendants.

19       109.    All of the acts and omissions taken in regard to the care and custody of Kimberly

20  were in accordance with the City of Forks' established practices or were ratified by the

21  Policymaking and Supervisory Defendants.

22       110.    It is a common and widespread practice at the Jail to ignore information related to

23  suicidality and medical and mental health care in a measured attempt to avoid liability in a deliberate

24  indifference action, by claiming a lack of knowledge.

25

COMPLAINT - 18

111.    Reasonable and prudent jailers do not utilize cloth-type sheets, which inmates can easily hang themselves with.  The City of Forks and its Policymaking and Supervisory Defendants usage of cloth-type sheets, in the face of other suicides wherein cloth-type sheets were utilized, constitutes negligence and deliberate indifference.

112.    The City of Forks and its Policymaking and Supervisory Defendants were also negligent and deliberately indifferent when they failed to adequately train individual Defendants. These individual Defendants failed to perform their duties as described in this Complaint due to inadequate training.  The City of Forks and its Policymaking and Supervisory Defendants knew that the City's training inadequately instructed its employees, but did nothing to change this policy.

113.    The City of Forks and its Policymaking and Supervisory Defendants failed to adequately train Jail officers and employees in suicide prevention.

114.    The City of Forks and its Policymaking and Supervisory Defendants failed to train Jail officers and employees to properly identify, monitor, and protect inmates.

115.    The City of Forks and its Policymaking and Supervisory Defendants failed to train Jail officers and employees in intake procedure.

116.    The City of Forks and its Policymaking and Supervisory Defendants failed to enforce policies and procedures for suicide prevention, including, but not limited to, policies and procedures for prisoner intake and monitoring of prisoners.

117.    The City of Forks and its Policymaking and Supervisory Defendants failed to implement or enforce policies and procedures for sexual harassment or assault prevention.

118.    The City of Forks and its Policymaking and Supervisory Defendants failed to enforce the aforesaid policies and procedures by investigating claimed sexual harassment or assaults or disciplining officers and employees, or by other means.

COMPLAINT - 19

119.   The City of Forks and its Policymaking and Supervisory Defendants failed to train Jail officers and employees to identify and report misconduct by fellow officers and employees.

120.   The City of Forks and its Policymaking and Supervisory Defendants failed to investigate reported misconduct by Jail officers and employees.

121.   The City of Forks and its Policymaking and Supervisory Defendants caused, permitted, and allowed a custom and practice of continued and persistent deviations from policies and procedures, including cell check policies and standards.

122.   The City of Forks and its Policymaking and Supervisory Defendants maintained inadequate sexual harassment and suicide prevention policies and procedures to identify, monitor, and protect at-risk inmates.

123.   The City of Forks and its Policymaking and Supervisory Defendants maintained inadequate monitoring and safety check systems.

124.   The City of Forks and its Policymaking and Supervisory Defendants failed to provide sufficient resources to provide for the necessary mental health and medical care for mentally ill inmates.

125.   The City of Forks and its Policymaking and Supervisory Defendants maintained a policy of not regularly monitoring inmates, including mentally ill inmates.

126.   The City of Forks and its Policymaking and Supervisory Defendants maintained a policy of ignoring and refusing to implement suicide prevention measures.

127.   The City of Forks and its Policymaking and Supervisory Defendants maintained a policy of permitting employees to provide clearly inadequate suicide prevention.

128.   The City of Forks and its Policymaking and Supervisory Defendants maintained inadequate sexual harassment prevention policies and procedures.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

129.    The City of Forks and its Policymaking and Supervisory Defendants maintained a policy of ignoring and refusing to implement sexual harassment prevention measures.

130.    The City of Forks and its Policymaking and Supervisory Defendants maintained a policy of permitting employees to provide clearly inadequate sexual harassment prevention measures.

131.    It is fundamental that jail inmates should not be sexually tormented by a jailer.  The City of Forks and its Policymaking and Supervisory Defendants failed to have the appropriate policy in place in this regard.  Had the City of Forks and its Policymaking and Supervisory Defendants kept their policies updated to reflect common correctional practices and standards to prevent sexual harassment, Kimberly's sexual tormenting and death would have been prevented.

132.    It is also fundamental that regular direct-view safety checks are needed to ensure jail inmates are safe.  Forks and its Policymaking and Supervisory Defendants failed to have the appropriate policy in place in this regard, too.  Had Forks and its Policymaking and Supervisory Defendants kept their policies updated to reflect common correctional practices and standards to prevent suicide, Kimberly's death would also have been prevented.

133.    Each of the above policies and established practices amounts to negligence and wanton or deliberate indifference to the known or obvious risk of suicide and serious medical and safety needs of at-risk detainees, including Kimberly.

134.    Defendants deliberately did not comply with or enforce formal policies and national standards, which evidences their wanton and deliberate indifference and negligence.  *See Ware v. Jackson County, Mo.*, 150 F.3d 873, 885 (8th Cir. 1998) (holding that "the evidence is sufficient to show that [supervisor's] failure to address sexual misconduct by [jail] personnel was the moving force behind the violation of [inmate's] constitutional rights."); *Salter v. Booker*, No. 12-0174, 2016 WL 3645196, at *12 (S.D. Ala. June 29, 2016) ("Defendants acted with deliberate indifference

COMPLAINT - 21

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

when they failed to enforce or follow the written jail policies and procedures put in place to protect suicidal prisoners.").

135.    Defendants are not even trying; they have been negligent, grossly negligent, and have showed wanton and deliberate indifference to the medical and safety needs of the inmates at the Jail.  This includes, again, failing to have and follow proper training, policies, and procedures for the safety, care, and treatment of people in the Jail.  It also includes a cold-hearted attitude on the part of Jail staff, who ignore medical and safety harms as they present and who turn a blind eye to people who have serious medical and safety needs.

136.    Each and every individually named Defendant had knowledge that a substantial risk of serious harm existed as to Kimberly's health and safety.  The City of Forks and its Policymaking and Supervisory Defendants had knowledge that their policies, customs, or protocols created a substantial risk of serious harm as to Kimberly's health and safety.  But even if Defendants did not have knowledge of the risk of harm, the risk created by their policies, customs, or protocols—and lack thereof/lack of training thereon/lack of funding to implement—was obvious in light of reason and the basic general knowledge that Defendants are presumed to have obtained regarding the type of deprivation.

137.    The acts and omissions caused by Defendants through their policies, practices, customs—including inadequate staffing, training, preparation, procedures, supervision, investigation, and discipline—were a proximate cause of Kimberly's pain, suffering, death, and Plaintiffs' damages.

G.        **KIMBERLY BENDER SUFFERED EXTREME PHYSICAL AND EMOTIONAL PAIN.**

138.    Kimberly left behind a loving mother and young son, and extended family.

139.    The aforesaid acts and omissions of Defendants deprived Kimberly of her right to be free from cruel and punishment and to due process of law as guaranteed by the Fourteenth

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1  Amendment of the United States Constitution; directly caused and/or directly contributed to her

2  pain, suffering, and a general decline of her quality of life; directly caused or directly contributed

3  to cause her death; directly caused or directly contributed to cause her family to suffer loss of

4  services, companionship, comfort, instruction, guidance, counsel, training, and support; and

5  directly caused or directly contributed to cause her family to suffer pecuniary losses, including but

6  not limited to medical and funeral expenses.

7      140.    Prior to death, Kimberly suffered extreme physical and mental pain, terror,

8  humiliation, anxiety, suffering, and emotional distress.

9      141.    Kimberly's death was completely unnecessary and could have been easily prevented

10  via provision of even the most basic safety measures and medical care and treatment.

11                              **V. CLAIMS**

12  **A.**          **FIRST CAUSE OF ACTION – NEGLIGENCE**

13      142.    Defendants had a duty to care for inmates and provide reasonable safety and medical

14  and psychiatric care.

15      143.    This duty extends to foreseeable harms and includes protecting inmates against self-

16  inflicted harms such as suicide.

17      144.    This duty is an affirmative one under both Washington State and federal law because

18  inmates, by virtue of incarceration, are unable to assure their own personal safety or obtain medical

19  and psychiatric care for themselves.

20      145.    Defendants breached this duty, and were negligent, when they failed to have and

21  follow proper training, policies, and procedures on the prevention of sexual harassment against

22  inmates, and the treatment and supervision of inmates with apparent medical and psychiatric needs.

23      146.    Defendants breached that duty, and were negligent, when they failed to adequately

24  assure Kimberly's personal safety and to treat Kimberly's medical and psychiatric needs.  Indeed,

25

COMPLAINT - 23                              **Galanda Broadman PLLC**
                                            8606 35th Avenue NE, Ste. L1
                                            Mailing: P.O. Box 15146
                                            Seattle, WA 98115
                                            (206) 557-7509

because Kimberly's safety, medical, and psychiatric needs were ignored, Defendants were grossly negligent.

147. Defendants breached that duty, and were negligent, when they failed to have and follow proper training, policies, and procedures on the provision of reasonable and necessary personal safety measures for inmates and medical and psychiatric care and treatment of inmates.

148. Defendants breached that duty, and were negligent, when they failed to ensure adequate and proper staffing at the Jail.

149. Defendants breached that duty, and were negligent, when they failed to ensure that Kimberly's complaint against Defendant Gray was properly investigated and resolved.

150. Defendants breached that duty, and were negligent, when they failed to ensure that Kimberly was properly supervised or that cell checks were conducted in a safe, timely, and consistent manner.

151. Defendants breached that duty, and were negligent, when they ignored notification of Kimberly's serious mental health condition, and suicidality.

152. Defendants breached that duty, and were negligent, when they failed to properly assess and treat Kimberly prior to her death.

153. As a direct and proximate result of the breaches, failures, and negligence of Defendants, as described above and in other respects as well, Kimberly was allowed to successfully take her own life.

154. Kimberly suffered unimaginable pre-death pain, suffering, shame, embarrassment, and terror.

155. As a direct and proximate result of the breaches, failures, and negligence of Defendants, as described above and in other respects as well, Plaintiffs have incurred and will continue to incur economic and noneconomic damages in an amount to be determined at trial.

COMPLAINT - 24

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

156.    As a direct and proximate result of the negligence of Defendants, Kimberly son and mother have suffered the loss of familial association with Kimberly.  Plaintiffs have suffered and continue to suffer extreme grief and harm due to mental and emotional distress as a result of Kimberly's wrongful death.

**B.    SECOND CAUSE OF ACTION – 42 U.S.C. § 1983**

157.    The acts and failure to act described above were done under color of law and are in violation of 42 U.S.C. § 1983, depriving Plaintiffs of their civil rights.

158.    At the time Kimberly was detained by the City of Forks, it was clearly established in the law that the Fourteenth Amendment imposes a duty on jail officials to provide humane conditions of confinement, including adequate medical and mental health care, and to take reasonable measures to guarantee the safety of the inmates, including from sexual harassment and self-harm.

159.    Being subjected to sexual harassment and unnecessary physical and mental pain and suffering is simply not part of the penalty that criminal offenders pay for their offenses against society.  As a result, municipalities and Jail officials are liable if they know or should know that an inmate or inmates face a substantial risk of serious harm and but disregard that risk by failing to take reasonable measures to abate it.

160.    Defendants knew that Kimberly was sexually harassed, yet callously disregarded her complaint by failing to take reasonable measures to investigate it or abate her unsafe situation.

161.    Defendants knew that Kimberly faced a substantial risk of suicide, yet callously disregarded that risk by failing to take reasonable measures to abate her unsafe situation.

162.    Defendants knew that Kimberly faced a substantial risk of harm or death due to her serious mental health condition, especially given her sexual harassment at the Jail, yet callously disregarded that risk by failing to take reasonable measures to abate it.

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

163.    Having an inmate in custody creates a duty of care that must include enough attention to personal safety and mental health concerns that inmates who are unsafe or unwell receive protection medical attention. Defendants had numerous opportunities to meet their responsibilities to help Kimberly, but no one did.  Defendants looked away, literally.

164.    The City of Forks and its Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate safety and health caused by the City's hiring and retention of Defendant Gray, before his probationary status was terminated.

165.    The City of Forks and its Policymaking and Supervising Defendants knew or should have known of this excessive risk to inmate safety and health because at least three other inmates had been sexually harassed by Defendant Gray since July 2019.

166.    The City of Forks and its Policymaking and Supervising Defendants knew of and callously disregarded the excessive risk to inmate safety and health caused by the City's inadequate formal and informal policies, including a lack of training, funding, and supervision.

167.    The City of Forks and its Policymaking and Supervising Defendants were responsible for a policy, practice, or custom of maintaining a longstanding constitutionally deficient safety and medical and mental health care, and training thereon, which placed inmates like Kimberly at substantial risk.

168.    There was little to no supervision of Kimberly and inmates like her because the City of Forks and its Policymaking and Supervising Defendants maintained a known policy and custom of understaffing—leaving one jailer responsible for the care and wellbeing of all of the inmates in the Jail at any given time.  That this ratio would result in serious injury or death would have been obvious to any jail management official exercising his or her professional judgment.

169.    The City of Forks has an impermissible policy of understaffing and indifference to inmate safety and supervision that was maintained with deliberate indifference.  The City of Forks

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

and its Policymaking and Supervising Defendants know that the Jail is understaffed and that their employees often have trouble completing all of their duties as a result of this understaffing. Yet these Defendants failed to take any steps to correct these inadequacies.

170. The City of Forks has one of the highest use rates of opioid use in Clallam County, and Clallam County has one of the highest use rates in the State of Washington. Yet the Jail has one of the laxest opioid withdrawal policies in the State. In fact, the Jail has no opiate withdrawal policy, no medication assisted treatment for opioid use disorder maintenance policy, and no medication-assisted treatment for opioid use disorder induction policy. The City of Forks and its policymakers' failure to have or implement these policies, despite the known and obvious detrimental consequences, constitutes negligence, gross negligence, and deliberate indifference.

171. The City of Forks has an impermissible policy of using cursory mental health screenings and check-box "fit for jail" determinations to determine that mentally ill inmates are not a danger to themselves.

172. The City of Forks has an impermissible policy of ignoring or not properly investigating or resolving inmate sexual harassment complaints.

173. The City of Forks has an impermissible policy of not monitoring inmates or performing regular or timely safety checks of inmates.

174. Defendants were aware that Kimberly had been sexually harassed and was suicidal—because it was obvious. From this evidence, a reasonable jailer would have been compelled to infer that a substantial risk of serious harm existed. Defendants, however, failed to take any steps to alleviate this risk. And Kimberly died as a result.

175. As a direct and proximate result of the objective deliberate indifference of Defendants, as described above and in other respects as well, Kimberly died a terrible, inhumane,

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

and easily preventable death.  She suffered pre-death pain, anxiety, and terror, before becoming

asphyxiated, and leaving behind a loving son and mother.

176.    As a direct and proximate result of the objective deliberate indifference of

Defendants, Plaintiffs—Kimberly's son and mother—have each suffered the loss of familial

association with Kimberly, in violation of their Fourteenth Amendment rights.  Plaintiffs, each of

them, have suffered and continue to suffer extreme grief and harm due to mental and emotional

distress as a result of Kimberly's death.

177.    Defendants have shown wanton, reckless, and callous disregard and indifference to

inmates' rights and safety, and are therefore subject to an award of punitive damages to deter such

conduct in the future.

## VI.    JURY DEMAND

172.    Plaintiffs hereby demand a trial by jury.

## VII.    AMENDMENTS

173.    Plaintiffs hereby reserve the right to amend this Compliant.

## VIII.    RELIEF REQUESTED

174.    Damages have been suffered by all Plaintiffs and to the extent any state law

limitations on such damages are purposed to exist, they are inconsistent with the compensatory,

remedial and/or punitive purposes of 42 U.S.C. § 1983, and therefore any such alleged state law

limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

175.    WHEREFORE, Plaintiff requests a judgment against all Defendants:

(a)    Fashioning an appropriate remedy and awarding economic and noneconomic

damages, including damages for pain, suffering, terror, loss of consortium, and loss of familial

relations, and loss of society and companionship pursuant to 42 U.S.C. §§ 1983 and 1988, in an

amount to be determined at trial;

COMPLAINT - 28

**Galanda Broadman PLLC**
8606 35th Avenue NE, Ste. L1
Mailing: P.O. Box 15146
Seattle, WA 98115
(206) 557-7509

1    (b)  Punitive damages;

2    (c)  Awarding reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988,

3 or as otherwise available under the law;

4    (d)  Declaring the defendants jointly and severally liable;

5    (e)  Awarding any and all applicable interest on the judgment; and

6    (f)  Awarding such other and further relief as the Court deems just and proper.

7  Respectfully submitted this 20th day of October 2021.

8          GALANDA BROADMAN, PLLC

9          s/Gabriel S. Galanda

10         Gabriel S. Galanda, WSBA #30331
          s/Ryan D. Dreveskracht

11         Ryan D. Dreveskracht, WSBA #42593
          s/Matthew J. Slovin

12         Matthew J. Slovin, WSBA #58452
          Attorneys for Plaintiffs

13         Email: ryan@galandabroadman.com
          Email: gabe@galandabroadman.com

14         Email: matt@galandabroadman.com

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT - 29